(C.D. 2101)

THE LEE HIRRMANN CO., A/C THE COLDWATER SEAFOOD CORP. *v.*
UNITED STATES

United States Customs Court, First Division

(Decided July 15, 1959)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Murray Sklaroff*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

WILSON, Judge: The merchandise at bar, described as "haddock blocks" and "cod blocks," was classified for duty at the rate of 2½ cents per pound under the provisions of paragraph 717(b) of the Tariff Act of 1930 for "Fish, fresh or frozen * * * filleted, skinned, boned, sliced, or divided into portions, not specially provided for." It appears that the fish blocks in question were advisorily classified by the examiner as "fillets" (R. 75). Plaintiff claims the merchandise properly classifiable at the rate of 1 cent per pound under paragraph 720(b) of the act, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, as "Fish, prepared or preserved, not specially provided for: * * * In bulk or in immediate containers, weighing with their contents more than fifteen pounds each."

Two sizes of fish blocks are described on the invoices herein: 12-pound and 22½-pound size, packed in corrugated paper containers. The 12-pound blocks are packed 5 blocks to each container, and the 22½-pound blocks are packed 3 blocks to a container.

A 12-pound block of fish illustrative of the imported merchandise, together with photographic representations of the items, was received in evidence as plaintiff's illustrative exhibit 1 and collective illustrative exhibit 2, respectively (R. 10–11). A package of fish offered as illustrative of "fish fillets" was received in evidence as plaintiff's illustrative exhibit 3 (R. 17). A photograph of a thawed-out 10-pound

block of fish imported by the plaintiff herein, not, however, from the importation at bar, was received in evidence as defendant's illustrative exhibit A (R. 71).

Jon Gunnarsson, president of The Coldwater Seafood Corp., testified that his company imports seafood, including fish fillets and fish blocks, such as "cod blocks" and "haddock blocks," and various other types of fish. The witness described the production of fish blocks such as plaintiff's illustrative exhibit 1 as follows:

A. The flesh from the cod, for instance, is cut from the fish. The skin is taken away from the flesh, and the bones are removed, and there is a steel frame of this rectangular shape and size, correct size, to make the block, and also have the correct height of the steel frame. Then this flesh of the fish is thrown into the steel frame, and the length of the fish flesh is parallel to the width of the block, and then the small bits and trimmings are put into it to fill out where there are any voids between the whole pieces, and then all this is pressed together in a plate freezer under considerable pressure, more than any other fillets, in order to make it a compact mass of this fish flesh.

Q. You said the spaces, or some word to that effect, were filled with bits and trimmings?—A. Yes.

Q. Will you tell us why that is done?—A. In order to make it compact, so that when it is cut up for fishsticks production, that there are not any air spaces in the mass of fish. [R. 12.]

Mr. Gunnarsson explained the difference in production and use of the fish block (plaintiff's illustrative exhibit 1) and fillets (plaintiff's illustrative exhibit 3) as follows:

THE WITNESS: In this Illustrative Exhibit 1, we use fish of all sizes and pieces, and also trimmings, in order to make it a compact mass, and it is pressed very firmly together in order to avoid any air space being inside, and it is used for processing, for processing, as I said, of fish sticks and portions, and then it is marketed, whereas the fillets in Illustrative Exhibit 3, they are whole fillets, cleanly cut, ready for the consuming public, and this particular pack of fillets is used here in this country for the catering trade. [R. 18–19.]

In the fish blocks, the fillets removed from the fish are not trimmed in any way. Any loose meat around the edges is left intact and the napes that are taken from the fillets are put into the block. Before pressing, all the open spots are filled with loose pieces and trimmings to make one compact mass, and the material is pressed together to make the fish block. Usually, the fish block contains about 10 per centum of small bits and trimmings. (R. 26–27.)

The testimony of the witness Gunnarsson to the effect that these fish blocks were cut into portions or sticks and further processed by breading and cooking, but that the fillets (plaintiff's illustrative exhibit 3), are sold in the same condition and in the same containers as when purchased, without any further processing, was confirmed by that of plaintiff's remaining witnesses (R. 42; 53). Plaintiff's witnesses, all of whom had dealt in merchandise, such as that at bar, as

well as in fish "filleted," "skinned," "boned," "sliced," or "divided into portions," further testified that the fish block, plaintiff's illustrative exhibit 1, is not included within any of the latter terms, because it is not used for the same purpose as the items mentioned (R. 21; R. 64); that the merchandise represented by plaintiff's illustrative exhibit 1 would not be accepted as a good delivery of an order for fish "filleted," "skinned," "boned," "sliced," or "divided into portions" (R. 21; R. 50; R. 64); that the fish blocks under consideration are never thawed out for the purpose of obtaining fillets for sale (R. 22–23; R. 38; R. 67).

The Government's only witness was the examiner of the merchandise under consideration, who testified that he took a 10-pound cod block, consisting of bits of boneless and skinless fish, from a different importation by the same importer herein but produced by the same producer of the merchandise before the court, and that he had such block thawed out and photographed (defendant's illustrative exhibit A). Defendant's witness was unable to state the size of the pieces shown in defendant's illustrative exhibit A. In this connection, the record discloses the following colloquy:

CHIEF JUDGE OLIVER: Is it fair for us to assume, looking at this photograph, Illustrative Exhibit A, that there were no small pieces in that block at all to fill in anything?

THE WITNESS: That is everything that was in that block.

CHIEF JUDGE OLIVER: Looking at the photograph, am I safe in saying there are no pieces in there, just these large pieces you show in the photograph?

THE WITNESS: Exactly.

JUDGE WILSON: Would you say there are no small pieces in that block, Illustrative Exhibit 1?

THE WITNESS: I couldn't say unless it was thawed, or nor can anybody else say. [R. 72.]

While defendant's witness insisted that if there were any small pieces adhering to the larger pieces, they would show up on the photograph, illustrative exhibit A, he agreed, however, that when a block, such as plaintiff's illustrative exhibit 1, is produced, it results in a quantity of fish "pressed together into a cohesive mass with some of the fibers of the fish becoming intertwined with each other." (R. 73.)

It is the position of the Government in the case at bar that the fish flesh comprising the fish blocks in question consists of filleted or skinned or boned fish, within the common meaning of those terms, and that, as a matter of law, freezing such fish in block form did not remove them from the provisions of paragraph 717(b) of the act under which the involved merchandise was classified.

Plaintiff, in its brief, argues that this case is controlled by the holding of the court in *Iceland Products, Inc., and D. J. Ambrosio* v. *United States*, 38 Cust. Ct. 526, Abstract 60817, involving the same "classifica-

tion" and "claim" as here involved. In the above case, the loose flesh and trimmings obtained as a byproduct in processing "fillets" were placed in stainless steel or monel containers and were then packed in molds to make a 7-pound block. The fresh "block" was wrapped with parchment paper and, still in this form, was put into plate freezers and then quickfrozen. After it was quickfrozen, it was removed from the form and given a "glaze bath," i.e., the frozen block was submerged quickly in a bath of a weak salt brine which froze it immediately and formed an ice glaze, the purpose being to seal against dehydration. Then, these 7-pound blocks were massed in 8 blocks to the case.

The court, in the *Iceland Products* case, *supra*, in holding the involved blocks properly dutiable under paragraph 720(b) of the Tariff Act of 1930, as modified, *supra*, as "Fish, prepared or preserved, not specially provided for: * * * In bulk or in immediate containers weighing with their contents more than fifteen pounds each," at the rate of 1 cent per pound, as claimed, stated, page 527:

* * * All the fillets of frozen and fresh fish described in paragraph 717 are sold directly to the consuming public, as packed and in the condition as imported. On the other hand, the "Fish Bits" imported in the 7-pound frozen blocks, hereinbefore described, are never sold for direct consumption, as imported, but find a market only with companies who process the fish bits into fish flakes or fish cakes.

And, at page 528:

* * * We agree with the statement in plaintiffs' brief that "Fish Bits" are not made up of a solid piece. "Instead they are made of loose pieces, irregular in shape and size. No particular fish can be identified when the fish bits are in block form."

We are of opinion that the situation in the *Iceland Products* case, *supra*, parallels that in the case at bar and that the holding therein is decisive of the present issue. The testimony in this case also shows that the involved fish blocks are composed of fish of various sizes and loose pieces and trimmings and that they are only used by the processing trade and never sold for direct consumption as imported, whereas the "fillets" (plaintiff's illustrative exhibit 3) are whole fillets, cleanly cut, ready for the consuming public without further processing. In the Summary of Tariff Information 1929, relative to merchandise covered by paragraph 717(b) of the Tariff Act of 1930, we find, at page 1140, under the heading of "ALL OTHER FISH, SKINNED OR BONED, IN BULK, OR IN IMMEDIATE CONTAINERS WEIGHING WITH THEIR CONTENTS MORE THAN 15 POUNDS EACH":

Description and uses.—* * *

Fillets are prepared from the whole fish by removing the head and entrails and cutting along each side of the skeleton to produce two pieces of flesh. Some fillets are further processed by removing the skin. The product is either shipped fresh for immediate consumption, frozen and held in storage for subsequent use, or smoked. * * *

It further appears from the record herein that the fish block in question, as imported, would not be accepted as a good delivery of an order for fish "filleted," "skinned," "boned," "sliced," or "divided into portions." Of similar import is the testimony of plaintiff's witnesses that, from a commercial standpoint, fish blocks, such as those in question, are never "thawed out" to obtain fish fillets or any of the other varieties of fish enumerated under the paragraph of the act (paragraph 717(b)) under which the involved merchandise was classified. This testimony stands uncontradicted. The fact that the fish blocks in the *Iceland Products* case, *supra*, were composed of scraps and bits of material obtained in trimming fillets, whereas, in the case at bar, the involved fish blocks are composed of large pieces of skinless and boneless fish to which are added loose pieces and trimmings, does not, in our opinion, call for a different determination than that here found. The witness who here testified on behalf of the Government agreed that when a block, such as plaintiff's illustrative exhibit 1, is produced, it results in a quantity of fish "pressed together into a cohesive mass with some of the fibers of the fish becoming intertwined with each other" (R. 73). Accordingly, in its condition as imported, the merchandise represented by plaintiff's illustrative exhibit 1 is not fish "filleted," "skinned," "boned," "sliced," or "divided into portions," having lost its identity as such. It has reached a condition beyond the latter stages and is marketable in such condition for further processing.

On the record presented, we hold the involved merchandise properly dutiable at the rate of 1 cent per pound under paragraph 720(b) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, as "Fish, prepared or preserved, not specially provided for: * * * In bulk or in immediate containers, weighing with their contents more than fifteen pounds each," as claimed. The protests are sustained.

Judgment will issue accordingly.